UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Scott R. Coulter,

    Plaintiff,

    v.                                                 Civil Action No. 2:11-CV-173

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 14, 17)

Plaintiff Scott Coulter brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits for a closed period of disability from October 1, 2008 through August 31, 2009. He has already been adjudged disabled as of September 1, 2009. Pending before the Court are Coulter's motion to reverse the Commissioner's decision (Doc. 14), and the Commissioner's motion to affirm the same (Doc. 17). For the reasons stated below, the Court DENIES Coulter's motion and GRANTS the Commissioner's motion.

## Background

Coulter was fifty-four years old on his alleged disability onset date of October 1, 2008. He has a high school education, and worked as a carpenter. He also has experience working as a hair stylist at his parents' and then his own salon. (AR 473.) He is married, and has three adult sons and five grandchildren. (AR 164, 329, 473.)

On January 7, 2000, Coulter was involved in a serious motor vehicle accident, resulting in numerous injuries, including a head injury, an open fracture to his left arm, fractured ribs and vertebrae, a deep cut over his left eye, a ruptured Achilles tendon in his left leg, a meniscal tear, a severed ligament in his left leg, and multiple abrasions and soft tissue contusions. (AR 474.) Following the accident, Coulter underwent over a dozen surgeries and procedures, some of which were unsuccessful and had to be re-done. (AR 166, 474.) Despite his injuries from the accident, Coulter returned to work in approximately April 2001 and worked "more or less continuously" until October 2008, when he experienced exacerbation of his symptoms. (Doc. 15 at 2.) Since the accident, Coulter has suffered from left shoulder problems; low back pain; leg, knee, and hip pain; decreased hand strength; hypothyroidism; coronary artery disease; hypertension; sleep apnea; occasional migraine headaches; and hypercholesterolemia. Additionally, he has suffered from depression, fatigue, and lack of motivation. (AR 475.)

On November 19, 2009, Coulter filed an application for disability insurance benefits. Therein, he claims that, beginning on October 1, 2008, the following illnesses, injuries, or conditions limited his ability to work:

> Orthopedic injuries, left shoulder pain/left achillies [sic] tendon pain, knee pain, both knees/poor mobility, right shoulder pain/limited motion, left hand weakness, lower back pain/extends down left leg, hip pain, left ankle pain and weakness, heart condition, hypothyroidism/depression/anxiety/ gout[,] . . . . Had several surgeries to fix multiple injuries from sever[e] auto accident. The injuries have not healed well and conditions are worsening. Orthopedic injuries prevent work and concentration issues from depression. Heart condition getting worse. Need to take [medication] for anxiety. Auto accident injured legs and back[.]

(AR 147.) Coulter further alleges that his heart condition caused shortness of breath; and

that he had a thyroid condition which caused fatigue.  (*Id.*)  He explains that these conditions resulted in him being unable to lift, carry, stand, use tools, or climb steps; being anxious and worried; and having "significant anger and rage" towards the person who caused the accident.  (*Id.*)  Coulter's application was granted, but with a disability onset date of September 1, 2009 instead of October 1, 2008, as claimed.  (AR 77-79, 89-83.)  This decision was affirmed on reconsideration, and Coulter timely requested an administrative hearing to contest the disability onset date.  (AR 101.)

     A hearing was conducted on October 14, 2010 by Administrative Law Judge ("ALJ") Edward Hoban.  (AR 52-76.)  Coulter appeared and testified, and was represented by an attorney.  Vocational expert ("VE") Christine Spalding also testified at the hearing.  On January 27, 2011, the ALJ issued a decision finding that Coulter was not entitled to an earlier onset date of disability and was not under a disability, as defined in the Social Security Act, from October 1, 2008 through August 31, 2009.  (AR 19.)  Nonetheless, the ALJ affirmed that, "under a liberal application of the . . . Medical-Vocational Guidelines," Coulter was disabled as of September 1, 2009, given that he turned fifty-five years old on December 10, 2009.  (*Id.*; *see* AR 78.)  A few months later, the Decision Review Board notified Coulter that it was affirming the ALJ's decision, rendering it the final decision of the Commissioner.  (AR 1-5.)  Having exhausted his administrative remedies, Coulter filed the Complaint in this action on June 29, 2011.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that

there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Hoban first determined that Coulter had not engaged in substantial gainful activity during the period from his alleged onset date of October 1, 2008 through August 31, 2009. (AR 14.) At step two, the ALJ found that Coulter had the severe impairments of left shoulder rotator cuff repair and an affective disorder. (*Id.*) Conversely, the ALJ found that Coulter's back, leg, knee, and hip pain; decreased hand strength; thyroiditis; mild cardiac ischemia; hypertension; status post-perianal cyst removal; and alcohol abuse were not severe impairments. (AR 15.) At step three, the ALJ found that none of Coulter's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 16.) Next, the ALJ determined that Coulter had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), "with only occasional use of the left upper extremity for all activity and a restriction to simple and repetitive tasks." (*Id.*) Given this RFC, the ALJ found that Coulter was unable to perform his past relevant work, "as it [required a] medium[-]to[-]heavy" exertion level. (AR 18.) Finally, based on testimony from the VE, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Coulter could have performed during the relevant period, including gate guard, furniture rental clerk, and cashier. (AR 18-19.) The ALJ concluded that Coulter had not been under a disability from October 1, 2008 through August 31, 2009. (AR 19.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Coulter raises three issues in his motion: 1) the ALJ's RFC determination; 2) the ALJ's alleged misstatement regarding Coulter's use of medication; and 3) the ALJ's step-five finding that Coulter was able to perform "other work" existing in significant numbers in the national economy during the relevant period. As explained below, the Court finds in favor of the Commissioner on each of these issues.

**I.     RFC Determination**

Coulter first argues that the ALJ's determination that he could perform "light work" from October 1, 2008 through September 1, 2009 ("the relevant period") is not supported by the medical evidence. Specifically, Coulter asserts that he could not perform "light work" during the relevant period because he "was reporting constant pain and limited motion in his left shoulder" and "was recovering from shoulder surgery." (Doc. 15 at 3.) In response, the Commissioner asserts that substantial evidence supports the ALJ's RFC determination.

As stated above, the ALJ determined that Coulter was able to perform "light work . . . with only occasional use of the left upper extremity for all activity and a restriction to simple and repetitive tasks." (AR 16.) According to the regulations, "light work" involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work . . . .
>
> . . . [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. . . .

SSR 83-10, 1983 WL 31251, at *5-6 (1983). The ALJ based his determination that Coulter was able to perform "light work" during the relevant period on Coulter's "activities of daily life" and "the objective medical evidence of record." (AR 17.) The ALJ was entitled to consider these factors in determining Coulter's RFC, *see* 20 C.F.R. § 404.1529(c)(2)-(3)(i), and substantial evidence supports the ALJ's findings, as discussed below.

With respect to daily activities, the record demonstrates that, during the relevant period, Coulter raised chickens, hunted ("a little bit") (AR 74), drove, shopped for groceries, prepared meals, and washed dishes. (AR 73-74, 134, 137.) He had no problems with personal care activities (AR 135); he used a riding lawn mower (AR 136); and he did limited gardening (AR 137). The ALJ's consideration of these activities was appropriate, as the Second Circuit has held that, although "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), it is proper for an ALJ to consider a claimant's daily activities in determining whether the claimant is disabled. *See, e.g., Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009)

("in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities"); SSR 96-7p,1996 WL 374186, at *5-6 (July 2, 1996); 20 C.F.R. § 404.1529(c)(3)(i).

Moreover, Coulter reported in a November 2009 Function Report that, although he had decreased strength in his left hand, he could lift twenty pounds. (AR 139.) At the administrative hearing, he testified that he could lift twenty pounds with his right arm, but it would be a struggle to lift that amount of weight with his left arm. (AR 67-68.) The VE testified that there were jobs Coulter could do, even assuming his ability to lift twenty pounds applied only to his right arm and not to his left. (AR 67.) Coulter also testified that, while he could walk for only approximately one-hundred feet (AR 60), he could stand "for a while" (*id.*) and could alternate standing and sitting for "a few hours" in each position (AR 65). This testimony and evidence supports the ALJ's RFC determination.

The ALJ also correctly noted that the objective medical evidence supports an RFC to do "light work," with restrictions. For example, prior to having surgery on his left shoulder in February 2009, treating orthopedist Dr. Matthew Nofziger of Taconic Orthopaedics advised Coulter that his limitations immediately following the surgery would be as follows: "passive motion for the [first] 6 weeks, active motion without weight for the [second] 6 weeks, [and] addition of weights at 3 months." (AR 457.) After having the surgery (AR 417-18), medical records from Dr. Nofziger indicate that, although Coulter was wearing a sling full-time, he was "quite comfortable" and "taking no pain medications after using . . . morphine for the first 4 days [after surgery]." (AR 460.) The note further states that Coulter was "overall . . . doing quite well." (*Id.*)

Approximately one month later, although Coulter reported some pain and cramping, he was still not taking any pain medications and was still noted to be doing "overall . . . quite well despite his setback." (AR 462.) In June 2009, Coulter again reported pain and limited function in his shoulder, but Dr. Nofziger again stated that he was doing "quite well" overall. (AR 451, 464.) A repeat MRI was performed, and found "[n]o cuff tear or problem, SLAP repair appear[ed] intact[,] [s]ubtle posterior labral abnormality, non[-]pathologic." (AR 451.) Dr. Nofziger advised Coulter to work on physical therapy exercises at home, take over-the-counter anti-inflammatory medications or Vicodin as needed, and "see [the Doctor] back in the future as needed." (AR 452.) Coulter does not appear to have sought further medical treatment for his shoulder pain until approximately seven months later, in January 2010, when he had an office visit with another provider at Taconic Orthopaedics, Robbin Hunt,[1] complaining of pain and weakness in his shoulder, especially when moving it above shoulder level; as well as hip, back, and knee pain. (AR 467.) Hunt's treatment notes report that Coulter had had "no recent injections or other treatments." (*Id.*) Physical examination revealed no significant abnormalities, and Hunt (like Dr. Nofziger before her) recommended physical therapy and over-the-counter anti-inflammatory medications, and suggested that Coulter be seen in consultation by a pain management group for potential injections to relieve his back pain. (AR 468.)

Although this objective medical evidence documents Coulter's pain and decreased mobility of his left shoulder, it does not support the claim that Coulter was as severely

---

[1] It is unclear from the record what Hunt's professional status at Taconic Orthopaedics was, although it appears she was not a physician or a registered nurse. (*Compare, e.g.,* AR 464 (referring to "Robbin Hunt") *with* AR 452 (referring to "Matthew Nofziger, M.D." and "Diane Chaloux, R.N.").)

limited in his overall ability to function as he claims to have been during the relevant period. The ALJ was entitled to evaluate the credibility of Coulter's complaints of pain, and further to disbelieve such complaints, in light of medical evidence like this. *See Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); *Rutherford v. Schweiker*, 685 F.2d 60, 63 (2d Cir. 1982). The ALJ was also entitled to consider Coulter's gap in treatment during the relevant period, as well as his failure to engage in physical therapy and other treatment options recommended by medical providers, when weighing the credibility of Coulter's complaints of pain. *See Arnone v. Bowen*, 882 F.2d at 39 (holding that the Commissioner properly attributed significance to claimant's failure to seek medical attention during the insured period, and that such failure "seriously undermine[s] [claimant's] contention that he was continuously disabled during that time"); *Russell v. Barnhart*, 111 F. App'x 26 (1st Cir. 2004) (holding that claimant's "failure to follow prescribed medical treatment contradicts subjective complaints of disabling conditions and supports an ALJ's decision to deny benefits") (citation omitted); SSR 96-7p, 1996 WL 374186, at *7 (providing that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements"). Moreover, the ALJ's RFC determination included a specific limitation for "only occasional use of the left upper extremity for all activity," accounting for Coulter's reported shoulder pain and limited mobility.

Also supportive of the ALJ's RFC determination, in a January 2010 vocational rehabilitation report, it was noted that Coulter stated that, although he could not do the level of construction work that he had done in the past, he was still able to do "light finish jobs." (AR 156.) The report concluded that Coulter's condition had "significantly deteriorated" such that he could no longer continue to work in the construction field "except in a very limited capacity." (*Id.*) Therefore, the report allowed for the possibility of Coulter performing some job in the construction field, and implied that he would be able to do other, non-construction (i.e., less physically taxing) jobs. The agency consultant opinions support this conclusion, allowing for the possibility of Coulter performing "light work" with "limited reaching," as noted by the ALJ. (AR 17 (citing AR 171-78, 498).)

The Court concludes that, although the record demonstrates that Coulter was limited in the activities he could perform during the relevant period, it does not support the level of limitation alleged by Coulter. Rather, the record – including Coulter's daily activities, the objective medical evidence, and the medical opinion evidence – supports the ALJ's conclusion that Coulter retained the ability to perform light work with restrictions on his upper left extremity.

## II.     ALJ's Statement about Coulter's Use of Pain Medications

Coulter next argues that the ALJ wrongly stated that Coulter "'did not regularly use pain medications when recovering from surgery.'" (Doc. 15 at 3 (citing AR 19).) In fact, asserts Coulter, he used morphine for the first four days after his February 2009 shoulder surgery and continued on hydrocodone as needed thereafter. (*Id.*) Noteworthy,

Coulter fails to cite to any particular portion of the record in support of his claim. (*See id.*)

The Court finds that the ALJ's statement regarding Coulter's use of pain medication was not incorrect, and even if it was, any error was harmless. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context). In January 2009, Dr. Nofziger stated in a treatment note that Coulter was taking "no medications." (AR 453.) As discussed above, the same Doctor stated in March 2009, three weeks out from a shoulder surgery, that Coulter was "taking no pain medications after using . . . morphine for the first 4 days [after the surgery]." (AR 460.) In April 2009, Dr. Nofziger again noted that Coulter was taking "[n]o regular pain medications." (AR 462.) This evidence supports the ALJ's statement that Coulter "did not regularly use pain medications when recovering from surgery." (AR 19.)

To the extent that Coulter's limited and short-lived use of morphine for the first four days after surgery may conflict with the ALJ's statement regarding Coulter's use of pain medication, the error was harmless, as substantial evidence demonstrates that Coulter did not "regularly use pain medications" during the relevant period. It was proper for the ALJ to consider this fact in determining Coulter's claim, as the regulations provide that, in assessing a claimant's credibility, ALJs "will consider . . . [t]he type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms." 20 C.F.R. § 404.1529(c) (3)(iv); *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding that, in evaluating plaintiff's credibility regarding the severity of his pain, the ALJ properly considered "whether [plaintiff] took pain medication") (citations omitted);

*Laderson v. Astrue*, No. 10 CV 7797 RPP, 2011 WL 6083189, at *9 (S.D.N.Y. Dec. 6, 2011) ("In assessing the credibility of the statements, the ALJ properly considered Plaintiff's testimony at the hearing that she was not on pain medication other than over-the-counter analgesics").

## III. Ability to Perform "Other Work"

Finally, Coulter argues that the medical evidence does not support the ALJ's finding that he would have been able to perform the jobs of gate guard, furniture rental clerk, and cashier during the relevant period. (Doc. 15 at 4.) In finding that Coulter could perform these jobs, the ALJ relied on the VE's testimony that the jobs existed in significant numbers in the national economy; and that, given a hypothetical individual with Coulter's RFC, he would be able to perform them. *See* 20 C.F.R. § 404.1560(c). Specifically, the VE testified that a "[r]ight[-]handed[-]dominant person who could only occasionally use the non-dominant left arm for all activities, pushing, pulling, reaching, handling, grasping, and gripping[;] and would be limited to occasional postural activities," could perform the jobs of gate guard, furniture rental clerk, and cashier. (AR 62.) Because, as explained above, this description of Coulter's limitations, and in turn the ALJ's RFC determination, was supported by substantial evidence, it was proper for the ALJ to rely on this testimony from the VE. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) ("The Commissioner may rely on a [VE's] testimony . . . so long as the hypothetical is based on substantial evidence."); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 890 (2d Cir. 2007). Thus, the ALJ did not err in his step-five finding regarding Coulter's ability to perform "other work."

## **Conclusion**

For these reasons, the Court DENIES Coulter's motion (Doc. 14), GRANTS the Commissioner's motion (Doc. 17), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 4th day of May, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge